UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERICK V. PETERSON,

       Plaintiff,

v.

BRIAN FOSTER, J. ZWIERS,
DENNIS RICHARDS, M. ALSTEEN,
and JULIE GUSSEL,

       Defendants.

Case No. 15-CV-1050-JPS

ORDER

1. INTRODUCTION

On June 20, 2016, each of the defendants filed motions for summary judgment on the plaintiff's, Erick V. Peterson's ("Peterson"), claims against them, including briefs in support, statements of fact, and other documentary evidence. (Docket #71 to #102). On July 27, 2016, Peterson filed responsive memoranda, statements of fact, and affidavits.[1] (Docket #116 to #126). On August 10, 2016, the defendants Dennis Richards ("Richards") and Julie Gussel ("Gussel") filed reply documents.[2] (Docket #127 to #133). The defendants Brian Foster ("Foster"), J. Zwiers ("Zwiers"), and M. Alsteen ("Alsteen") filed their own reply documents on August 12, 2016. (Docket #134 to #136). The motions are now fully briefed and, for the reasons stated below, they will be granted.

---

[1] On July 8, 2016, the Court granted Peterson's request for an extension of time to file his responses. (Docket #107). Peterson filed a second request for an extension of time on July 26, 2016. (Docket #115). However, in filing his responsive documents the next day, Peterson rendered his second request moot. It will be denied as such.

[2] On July 14, 2016, the Court granted Peterson's request to dismiss a number of defendants who had previously been party to one of the summary judgment motions. (Docket #111).

2.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.   RELEVANT FACTS

The Court will provide a brief timeline of events, then address each of the defendants' roles therein. In accordance with the standard of review, the facts and inferences therefrom are construed in Peterson's favor.[3] Given the

---

[3] Even applying this favorable standard of review, the majority of Peterson's attempts to dispute the defendants' proffered facts must be ignored. He either cites to evidence which is incompetent to dispute the fact, (Docket #136 at ¶ 10, where Peterson attempts to dispute that Brian Foster did not know of his medical condition, but cites a declaration and attached inmate complaint form that never mentions Foster), or simply cites no evidence at all, (Docket # 136 at ¶ 7, where Peterson attempts to deny a fact relating to J. Zwiers simply because he does not "know if her affidavit is true or not.").

Peterson may cite to his complaint as evidence because it is a sworn statement. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). Simply because he alleges something, however, does not make that allegation competent or admissible evidence. In accordance with the rules of evidence, the Court has not considered Peterson's statements of legal conclusions, argument, and facts he could not know.

voluminous factual briefing, the Court limits its discussion of the facts to those relevant to its holdings.

### 3.1    Peterson's Stay in Columbia County Jail

Prior to March 7, 2014, Peterson was incarcerated at Green Bay Correctional Institution ("GBCI").[4] The medical staff at GBCI prescribed several medications for Peterson, including three different laxatives. Peterson was transferred to Columbia County Jail (the "Jail") on March 7, 2014, for a court appearance. When he arrived there, he complained that his laxatives were not brought with him. He spoke with Jail staff and a nurse, Gussel, about the issue. The Jail staff and Gussel offered him non-prescription laxatives for purchase, but Peterson refused to pay and demanded his prescribed medications. From that time until March 10, 2014, Peterson apparently reiterated his complaints about being provided his prescribed laxatives. Peterson was returned to GBCI on March 10, 2014. At no time during his stay at the Jail was he provided with his prescription laxatives.

### 3.2    Foster

Foster became the warden of GBCI on March 23, 2014. (Docket #136 at ¶ 9).[5] Thus, he had no direct role in the events in question.

### 3.3    Zwiers

Zwiers was the Health Services Manager at the time of the Jail incident. *Id.* at ¶ 5. Zwiers was on sick leave for almost ten months prior to February 2014 and, when she returned, she did so on a half-time basis. *Id.* at

---

[4]These facts are drawn from the myriad factual briefs submitted by the parties. The Court has constrained its narrative in this section to the undisputable facts.

[5]Citations to the responsive fact documents are for brevity only; the cite may refer to material in the asserted fact, the response, and/or any reply.

¶ 7. As the Health Services Manager, she had no direct involvement in packing inmate medications for transfer. *Id.* at ¶ 23. With regard to the Jail incident, Zwiers was never told that Peterson was missing his laxatives and was not otherwise aware that he did not have them. *Id.* at ¶¶ 37, 44.

On August 28, 2013, the Wisconsin Department of Corrections instituted DAI Policy 500.80.15 (the "Policy"), which required nurses to pack all of an inmate's medications when they were transferred. *Id.* at ¶¶ 26-27. Prior to the Policy, the practice at GBCI was for inmates to pack their non-controlled medications, while the nurses would pack the controlled medications. *Id.* at ¶ 22. Zwiers had no role in implementing the Policy because she was on sick leave at the time. *Id.* at ¶ 28.

3.4     Richards

Richards is the sheriff of Columbia County. (Docket #128 at ¶ 2). He is not involved with the day-to-day operations of the Jail. *Id.* at ¶ 95. Richards does not supervise disbursement of inmate medication at the Jail. *Id.* at ¶ 97. With respect to the Jail incident, he never had contact with Peterson or made any decisions regarding his medical care. *Id.* at ¶ 98.

3.5     Alsteen

Alsteen is a nurse at GBCI. (Docket #136 at ¶ 4). Alsteen was trained in accordance with GBCI's pre-Policy practice that inmates were to pack their own non-controlled medications. *Id.* at ¶¶ 24-25. Thus, on March 6, 2014, prior to Peterson being transferred, she packed only his controlled medications, not his laxatives or any other non-controlled medications. *Id.* at ¶¶ 30-33. Alsteen believed Peterson would bring those medications himself. *Id.* at ¶ 34. She was not aware of the Policy at the time. *Id.* at ¶ 35.

Alsteen did not work at GBCI from March 7 to 9, 2014. *Id.* at ¶ 36. She was not told that Peterson was missing any medications or was having

constipation problems. *Id.* at ¶¶ 37-38. During the Jail incident, Alsteen had no knowledge that Peterson would be without his laxatives. *Id.* at ¶ 44. She understood that even if medications were missing, facilities such as the Jail would either provide them or notify the home prison. *Id.* at ¶ 45. She was not present at GBCI at the time Gussel called on March 7, 2014. *Id.* at ¶ 88; (Docket #132 at ¶ 115).

    3.6    Gussel

Gussel saw Peterson for approximately five minutes upon his admission to the Jail. (Docket #100 at ¶ 39). The Court's ruling is not based on her conduct, however, but rather Peterson's grievance-filing activity. The Jail has a grievance policy, and it is generally communicated to inmates upon admission.[6] *Id.* at ¶¶ 33-34. While at the Jail, Peterson filed one grievance. *Id.* at ¶¶ 59-60. That grievance stated that "[o]n 3-7-2014, Officer [*sic*] Fredrick failed to provide prescribed medication." (Docket #96-1 at 1). Peterson then stated two "medication issues," one for denial of Ibuprofen, and the second for denial of melatonin. *Id.* at 1-2. The grievance says nothing about laxatives and it was not appealed. *Id.*; (Docket #96 at ¶¶ 5-9). Peterson claims he intended to complain about the laxatives in that grievance but he was not allowed to write more. (Docket #121 at ¶¶ 60, 62). Once he returned to GBCI, Peterson filed a number of complaints using the state-level Inmate Complaint Review System ("ICRS"). (Docket #124-1 at 29-32, #124-2 at 2-3, #76-2, and #76-3). Each was directed at GBCI personnel for their roles in the laxative issue; none complained of Gussel's conduct. *Id.*, (Docket #100 at ¶ 68).

---

[6]Peterson appears to claim that he was not required to use the Jail's grievance system, (Docket #121 at ¶¶ 33-34), but he did so anyway.

4. ANALYSIS

Each of the defendants seeks summary judgment on Peterson's sole claim, which is that they exhibited deliberate indifference to his medical needs by failing to provide him his prescribed laxatives for three days. (Docket #10 at 8). To state a claim for a violation of constitutional rights pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The defendants do not dispute that they acted on the color of state law. They do, however, argue that they did not violate Peterson's constitutional rights. Foster, Zwiers, Alsteen, and Gussel also seek summary judgment on Richards' cross-claim against them. The Court will address each defendants' arguments in turn.

4.1 Foster and Zwiers

Foster and Zwiers seek summary judgment on the grounds that they were not personally involved in any alleged constitutional violation. (Docket #72 at 9-10). Vicarious liability does not exist in Section 1983 actions for violations of constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 667, 676 (2009). Instead, "a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Peterson has failed to do so. Foster did not become the warden of GBCI until *after* the events of this lawsuit. Though she was the Health Services Manager, Zwiers had no direct involvement in packing any inmate's medications and had no role in implementing the Policy. Peterson has

adduced no evidence that Foster or Zwiers, by their individual action or inaction, violated his constitutional rights.

Instead, at least with respect to Zwiers, Peterson's response argues that she should be liable for failing to train the nursing staff on the Policy. (Docket #118 at 2). This theory fails for two reasons. First, notwithstanding that "failure to train" Section 1983 claims are typically directed at entities, not individuals, such a failure "serves as a § 1983 liability basis only if the failure to train amounts to 'deliberate indifference' to the rights of persons with whom the [nursing staff] deal." *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1297-98 (7th Cir. 1989). The *Erwin* court explained:

> The liability only attaches if a deliberate choice to embark upon a course of action is made by policymakers from among various alternatives. For the § 1983 failure in training to constitute actionable "policy," this failure to train must reflect deliberate or conscious choice.
>
> …
>
> A particular [nurse]'s unsatisfactory training cannot alone suffice to attach liability to the state. …Nor can plaintiffs prevail merely by proving that an accident or injury could have been avoided had an officer received enhanced training forestalling the particular conduct resulting in the injury. Even adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability. After all, in almost every instance where a § 1983 plaintiff has suffered a violation of his constitutional rights by a government employee the plaintiff can point to something the government could have done to protect against that unfortunate incident. This is why claims alleging a constitutional deprivation due to failure to provide training to employees are cognizable under § 1983, and yield liability, only if that defendant's failure to train demonstrates its "deliberate indifference" to the constitutional rights of its [inmates]. Id.

*Id.* at 1298 (citations and quotations omitted).

Peterson has offered no evidence from which a reasonable jury could conclude that Zwiers' "failure to train" exhibited deliberate indifference towards his need for laxatives. In fact, the evidence shows the opposite was true. Zwiers was not involved in implementing the Policy because she was on sick leave. Peterson argues that because the Policy was in effect after she returned, Zwiers had "plenty of time" to implement the Policy. (Docket #118 at 2). Even assuming this were true (Peterson offers no evidence that it is), Zwiers' liability cannot simply be based on failing to implement the Policy while having an opportunity to do so. She must have made a conscious choice to refuse to implement the Policy, and there is no evidence before the Court to support that fact.

Both a standard deliberate indifference claim, and its derivative "failure to train" claim, require the plaintiff to satisfy a high burden. The *Gayton* court outlined the law of a "deliberate indifference" claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather,

> "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted) (emphasis added). Giving Peterson the benefit of all inferences in his favor, they show that Zwiers was at best negligent in failing to implement the Policy. This cannot support a jury finding of criminally reckless or intentional conduct on her part, and thus cannot form the basis of a deliberate indifference claim.

    4.2    Alsteen

Peterson's deliberate indifference claim against Alsteen is of the standard variety. It appears that the claim is based solely on her failure to pack Peterson's medications to be taken with him to the Jail. (Docket #47 at ¶ 1). Under the *Gayton* standards, Peterson has failed to create a jury question as to Alsteen's alleged deliberate indifference. As with Zwiers, the primary issue is the subjective component. Alsteen believed that Peterson would pack his own non-controlled medications consistent with her prior training and experience. She was not aware of the Policy, so she merely packed his controlled medications for his transfer to the Jail. Again, construing the facts in Peterson's favor, Alsteen was at most negligent. As noted above, deliberate indifference requires more than mere negligence. Alsteen must have been aware of a substantial risk of serious harm and either intentionally or recklessly ignored it. *Gayton*, 591 F.3d at 620. Peterson has not presented

evidence to support findings that: 1) Alsteen knew that failing to pack his non-controlled medications risked substantial harm; and 2) that she disregarded the risk.

Peterson makes two arguments with regard to his claim against Alsteen. First, he asserts that it was not a standard practice for inmates to pack their own medications. (Docket #118 at 3). The Court need not resolve this factual dispute because no evidence exists to counter Alsteen's testimony regarding her subjective knowledge, namely what she believed the medication-packing practice to be, and her lack of awareness of the Policy. Second, Peterson claims that a dispute exists as to whether Gussel contacted GBCI about the missing medications. *Id.* at 4. The dispute is not material to Alsteen's liability; she was not working during Peterson's stay at the Jail, and certainly not at the time of Gussel's call. Thus, Gussel's call could have had no effect on Alsteen's subjective awareness of the laxative issue.

 4.3 Richards

Richards seeks summary judgment on the same grounds as Foster and Zwiers—he had no involvement in any alleged constitutional violation. (Docket #82 at 11-12; Docket #127). Richards has no involvement in overseeing the Jail or providing medical care to the inmates therein. Peterson seems to concede this and, as before, now asserts that Richards failed to appropriately train his subordinates, which resulted in the deprivation of his prescriptions. (Docket #116 at 4). Richards responds that Peterson fails to offer any evidence to support this theory. (Docket #127 at 2). Recall that the evidence must show that Richards' failure to train amounted to deliberate indifference to Peterson's rights. *Erwin*, 872 F.2d at 1297-98. Peterson's only "evidence" is a general denial of Richards' asserted facts, and he implies that Richards is responsible merely because he holds the office of sheriff. (Docket

Page 10 of 14

Case 2:15-cv-01050-JPS Filed 08/31/16 Page 10 of 14 Document 138

#128 at ¶¶ 94-98). This is not sufficient to create a jury question as to Richards' liability. Peterson offers no evidence establishing Richards' duties, his role in the Jail, whether he made any decision regarding training the staff on inmate medications, or what that decision was. Rather, the only evidence before the Court is that Richards had no involvement in the Jail's daily operations.

4.4 Gussel

Gussel seeks summary judgment on two grounds: 1) Peterson failed to exhaust his administrative remedies; and 2) she was not deliberately indifferent to his medical needs. (Docket #131). The remedies question is dispositive. The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by Gussel. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

Peterson had available both the Jail's internal grievance procedure and the state-level Inmate Complaint Review System ("ICRS") procedures. *See* (Docket #101-6); Wis. Admin. Code. DOC § 310 *et seq.* Peterson filed only one complaint while at the Jail, using the Jail's grievance form, and never mentioned a nurse (he did not know Gussel's name) or laxatives. Once he returned to GBCI, Peterson filed a number of complaints regarding the laxative issue, but all were directed at GBCI personnel for failing to send his

medications with him.[7] The complaints mention that Jail personnel wanted to charge him for laxatives, but this was merely context for the complaint against GBCI. Thus, Peterson failed to even begin the administrative remedy process with respect to Gussel.

Peterson raises a number of counter arguments. First, he asserts that the Jail grievance was generally directed at the failure to provide any of his prescriptions. (Docket #120 at 2). However, this is belied by his specific reference to one of the former defendants, Nate Frederick, and his specific identification of the subject medications, Ibuprofen and melatonin. The purpose of a grievance is to "provid[e] prison officials a fair opportunity to address [the prisoner's] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The Jail grievance did not provide notice of Peterson's problem with Gussel or his laxatives, and so gave Jail staff no opportunity to address it.

Second, Peterson claims that he intended to file a grievance about the laxatives but needed more writing space to do so. (Docket #120 at 2). However, the Jail staff refused to provide him an additional form or other paper to attach to the grievance. *Id.* Even if he had been allowed more paper, asserting a separate complaint about Gussel and laxatives would have violated ICRS procedure. Wis. Admin. Code DOC 310.09(1)(e). More significantly, he failed to file an independent ICRS complaint about Jail staff conduct once he returned to GBCI.

Third, Peterson argues that he was not aware of a need to appeal the Jail grievance because it was not clearly denied, and, in any event, his short

---

[7]Peterson was allowed to file a complaint about a problem at the Jail after having been transferred back to his usual institution. Wis. Admin. Code DOC § 310.11(9).

stay at the Jail would have precluded an appeal. (Docket #120 at 2-3). Even if true, the point is irrelevant; the Jail grievance did not mention Gussel or laxatives and thus, as noted above, failed to even begin the grievance process with respect to her conduct. This argument also ignores the availability of the ICRS system which Peterson in fact used to complain about the conduct of GBCI personnel.

### 4.5 Richards' Cross-Claims

The other defendants seek summary judgment on Richards' cross-claims against them. (Docket #72 at 14; Docket #99 at 19). It appears Richards abandoned the cross-claims by failing to raise them in his answer to the operative complaint. (Docket #51). To the extent they may still arguably exist, because the Court will dismiss the entirety of Peterson's claims, the cross-claim is moot.

## 5. CONCLUSION

Foster, Zwiers, and Richards had no role in depriving Peterson of his laxatives. Alsteen was unaware of the Policy and believed that Peterson would take the laxatives himself, and so could not have exhibited deliberate indifference. Peterson failed to exhaust his administrative remedies with respect to Gussel. For these reasons, each of the defendants is entitled to summary judgment.

Accordingly,

IT IS ORDERED that the motion for summary judgment of the defendants M. Alsteen, Brian Foster, and J. Zwiers (Docket #71) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the motion for summary judgment of the defendant Dennis Richards (Docket #81) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the motion for summary judgment of the defendant Julie Gussel (Docket #98) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiff's motion for extension of time and for an injunction (Docket #115) be and the same are hereby DENIED as moot; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge